# FOR PUBLICATION

FILED & ENTERED

MAY 07 2024

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY bolte        DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>Eagan Avenatti, LLP,<br><br><br><br><br><br>Debtor(s). | Case No.:  8:19-bk-13560-SC<br><br>CHAPTER 7<br><br>Adv No:  8:20-ap-01059-SC<br>Adv. No:  8:20-ap-01060-SC<br>Adv. No:  8:20-ap-01150-SC<br><br>**ORDER RE REQUEST FOR FEES AND COSTS PER COURT'S DECEMBER 26, 2023 ORDER RE PLAINTIFF TRUSTEE'S MOTION FOR ISSUANCE OF AN ORDER TO SHOW CAUSE RE CONTEMPT FOR VIOLATION OF THIS COURT'S AUGUST 1, 2023 ORDER** |
| Richard A. Marshack, Chapter 7 Trustee,<br><br>Plaintiff(s),<br>    v.<br><br>Eisenhower Carlson, PLLC,<br><br>Defendant(s). | Date:        April 9, 2024<br>Time:        11:00 AM<br>Courtroom:  5C |

-1-

| Richard A. Marshack, Chapter 7 Trustee, |
|---|
| Plaintiff(s), |
| v. |
| Gallo Builders, Inc., |
| Defendant(s). |

| Richard A. Marshack, Chapter 7 Trustee, |
|---|
| Plaintiff(s), |
| v. |
| Honda Aircraft Company, LLC, |
| Defendant(s). |

For the reasons set forth below, the Court hereby awards $37,599.00 in attorney's fees and costs against the United States of America and in favor of the Chapter 7 Trustee, Richard Marshack[1].

## I.   Procedural Background Relevant to this Matter

On May 23, 2023, the United States of America (the "United States" or the "Government") filed its Motion to Quash Subpoena for Deposition Testimony of Retired IRS Special Agent Remoun Karlous, and for a Protective Order ("Motion to Quash") [Dk. 69]. In connection with determining the Motion to Quash, the Court required Plaintiff Chapter 7 Trustee Richard Marshack (the "Trustee") to submit proposed deposition questions for Agent Karlous and on June 21, 2023, the Trustee filed a list of forty-one (plus subparts) proposed questions (the "Deposition Questions") [Dk. 90]. The Court, after reviewing all related pleadings, and considering the arguments on the record, entered an order denying the Motion to Quash and ordered Agent Karlous to appear for

---

[1] The Court awards a single amount in connection with three identical contempt matters filed in *Marshack v. Eisenhower Carlson, PLLC*, Adv. No. 8:20-01059, *Marshack v. Gallo Builders, Inc.*, Adv. No. 8:20-01060, and *Marshack v. Honda Aircraft Company LLC*, Adv. No. 8:20-01150. Throughout these proceedings, the Court held, with the parties' consent, consolidated hearings. During the hearings, the parties referenced the pleadings filed in *Marshack v. Eisenhower Carlson, PLLC*, Adv. No. 8:20-01059 for reference only, and therefore the docket references within this order reference the pleadings filed within the *Eisenhower* docket. While identical pleadings were filed in each adversary, the docket numbers differ relative to each adversary. A copy of this order will be entered in each adversary.

a deposition on August 1, 2023 [Dk. 122] ("August 1, 2023 Order"). The August 1, 2023 Order is twelve pages in length, consisting of sixty-nine numbered paragraphs which contained specific orders individually addressing each of the forty-one Deposition Questions and Agent Karlous' obligations to respond thereto. These individual orders required Agent Karlous to provide full responses to Questions 1-3, 6-8, 13, 15-21, 22(a)-(e), 23-26, 28-32, 33(a)-(b), 34, 35(a)-(c), 36-41, permitted limited objections based upon certain asserted privileges, if applicable, to questions 4, 5, 9-11, 14 and 27, and excused the obligation to respond to questions 12, 22(f), 33(c) and 35(d).

Following the initial deposition where the Trustee's counsel encountered significant disruption of the deposition by counsel for the United States, on October 5, 2023, Trustee filed a Motion for an Issuance of an Order to Show Cause re Contempt Against the Internal Revenue Service, Retired Special Agent Remoun Karlous, Assistant United States Attorney Najah Shariff, and Assistant United States Attorney Brett Sagel for Violation of this Court's August 1, 2023 Order ("Contempt Motion") [Dk. 137]. The Contempt Motion was supported by the Declaration of John Reitman, filed October 5, 2023 [Dk. 138], which attached a transcript of Agent Karlous' September 14, 2023 deposition. On December 12, 2023, the Court conducted a hearing on the Contempt Motion. At that hearing, Trustee pointed out that in contravention of this Court's August 1, 2023 Order, Agent Karlous declined to answer twenty-five of the forty-one questions, and provided incomplete responses to the remaining questions to which responses were required. A transcript of the December 12, 2023 hearing can be found on the docket as Dk. 173.

On December 26, 2023, the Court, after reviewing and considering all relevant pleadings and arguments made on the record, entered an Order re Plaintiff Trustee's Motion for Issuance of an Order to Show Cause re Contempt for Violation of this Court's August 1 2023 Order ("Contempt Order") [Dk. 171], finding that the United States acted in contempt of the Court's August 1 2023 Order and instructed the Trustee to file and

serve on the United States its request for fees and costs.[2]

Pursuant to the Contempt Order, the Trustee filed his Request for Fees and Costs on January 19, 2024 ("Request for Fees") [Dk. 179]. The United States filed an Opposition to the Request for Fees on February 9, 2024 [Dk. 188]. The Trustee filed a Reply on February 23, 2024 [Dk. 202] as well as a Supplemental Declaration in Connection with the Request for Fees on March 6, 2024 [Dk. 207]. The Court held a hearing on the Request for Fees on March 12, 2024, heard arguments from both parties, and continued the hearing to April 9, 2024, at 11:00 a.m. Throughout the several hearings, including on April 9, 2024, the Government conceded that it knowingly and willfully violated the order of this Court.[3]

It should also be noted that the Contempt Order is now on appeal[4]; however, the United States decided to continue its briefing on the Contempt Order with its objections to the amount of fees and costs to be assessed. *See, e.g.,* United States' Opposition to Trustee's Request for Fees and Costs per Court's December 26, 2023 Order Re Contempt of this Court's August 1, 2023 Order, filed February 9, 2024, [Dk. 188]. This additional briefing is considered by the Court as a request for reconsideration of the Contempt Order and as such the Court amplifies and supplements the record for

---

[2] In issuing this order, the Court was mindful of the relevant standards as recently articulated by the Ninth Circuit in *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021): "When acting under its inherent authority to impose a sanction, as opposed to applying a rule or statute, a district court must find either: (1) a willful violation of a court order; or (2) bad faith. See *Evon*, 688 F.3d at 1035. As the Supreme Court has explained, a sanction may be awarded either for willful disobedience of a court order or when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *See Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 766, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1980); *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001)." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021). This Court has previously found, and the Government has conceded, that the Government willfully disobeyed this Court's August 1, 2023 Order.

[3] *See, e.g.,* Transcript of the December 12, 2023 Hearing, Dk. 173, pg. 42:2-6: "Ms. Westfahl-Kong: Thank you, your Honor. I do just want to begin by apologizing to the Court on behalf of the U.S. Attorney's Office for, you know, the mistakes and missteps that absolutely occurred in connection with the first deposition." The Government's counsel again acknowledges, as late as April 9, 2024, that the Government's counsel's decision at the deposition in question to violate this Court's order was intentional and it was the result of the collective decision of the Tax Division, that "it was the wrong decision and that they are working to correct that." *See*, Transcript, April 9, 2024 hearing, at 12:10:31 p.m.

[4] The Government did not wait for this Court to determine the amount of fees and costs to be awarded to file its appeal notice. *See*, Notice of Appeal filed January 9, 2024 [Dk. 174].

appeal, with respect to its contempt determination. The implied motion for

reconsideration is denied.

## II.    Prefatory Statement

As noted herein, the Government intentionally and willfully refused to obey this

Court's August 1 Order. Further, despite acknowledging the "mistakes and missteps"[5] it

made, the Government failed to voluntarily offer to reimburse the Estate, even for the

costs expended in connection with the deposition transcript, as described in the

following excerpt from the April 9, 2024, hearing, at 11:39:28 a.m:

THE COURT:        Can I ask you a question?

ALLISON WESTFAHL KONG ("AK") (Assistant United States Attorney, Chief of
Ethics and Post-Conviction Review): Of course.

THE COURT: Have you ever offered to actually compensate the Landau firm for
the $1,921.35? Have you even reached out and said "we'd be more than happy
to pay you for that?"

AK: Um, Your Honor, we did have -

THE COURT: It's a question. It's a yes or-

AK: So no.

THE COURT: - no question. You've never even reached out and said to them
"we'd be happy to pay that $1,921.35 that you had to put out of pocket?"

AK: No, but, can I add a little nuance?

THE COURT: Of course.

AK: Okay, um, there are some difficult, kind of, budgetary issues within the
department. Lots of approvals. Whether the judgment fund will get involved, so I
think, um, there are logistical barriers, but I -

THE COURT: So, let me ask you this. Did you ever call them and say, "I know
there are lots of barriers dealing with the federal government, but we will try to
see if we can acquire funds to take, to, reimburse you?" Have you ever done
that?

---

[5] Transcript of the December 12, 2023 Hearing, Dk. 173, pg. 42:2-6.

1    AK: I don't believe so. If I could just confirm with Ms. Tanner.

2    THE COURT: So, if I hadn't raised it now, you hadn't already done it? Am I right?

3

4    AK: That's correct.

5    Transcript, April 9, 2024 hearing, at 11:39:28 a.m.[6]

6    This Court has carefully reviewed the pleadings and oral argument history

7    involving this matter, and has paid particularly careful consideration to the matters

8    surrounding the issuance of the Contempt Order, the hearing held on December 12,

9    2023, where representatives of the Government acknowledged the Government's willful

10   violation of the Court's Order[7], the arguments by the Government that this Court has no

11   real power over the Government to enforce its own orders in general and the August 1

12   Order in particular, and that no assessment of fees or costs could be made by the Court

13   to compensate for the losses of the Bankruptcy Estate and the Chapter 7 Trustee's

14   counsel because of the Government's improper actions.

15   This decision is fairly simple. As routinely upheld by both the Ninth Circuit and

16   the United States Supreme Court, this Court finds that 11 U.S.C. Section 105(a)

17   provides the Court with inherent authority to hold a party in contempt for violating its

18   orders. This decision, combined with the Court's earlier findings, restates that by clear

19   and convincing evidence, the Government willfully violated this Court's August 1 Order.

20   The Government concedes that it can be held in contempt for violating orders,

21   but argues that because of the doctrine of sovereign immunity it cannot be required to

22   compensate an injured party, in this case, the Bankruptcy Estate and/or the attorneys

23

24   ---

[6] Further, at the conclusion of the April 9, 2024 hearing, the Court informed the parties that it would delay

25   issuance of its order by two weeks to provide them the opportunity to reach a consensual resolution to the
     matter. On April 24, 2024, the Government filed a Status Report Following Continued Fee Hearing

26   wherein the Government stated the "parties had good faith discussion but have been unable to reach an
     agreement." [See, Dk. 221].

27   [7] The continuing argument that the Government's position at the initial deposition was a misunderstanding
     of the law is disheartening since the Government counsel whose conduct gave rise to this situation was

28   present throughout the proceedings when the Court made clear, orally and in its written order, that the
     Government's objections were overruled.

1  for the Chapter 7 Trustee of the Bankruptcy Estate, for such harm. To that end, the

2  Government tells the Court, and every federal court, whether Article I or Article III, that

3  no true remedy exists to address the actions of the Government for violating orders of

4  the Court, even when significant harm is directly caused by the Government.

5      This Court disagrees. Unsupported by any statute or case law, the Government

6  asserts that the doctrine of sovereign immunity does not permit this Court to enforce its

7  own orders and compensate with monetary awards, making the wronged party whole.[8]

8  However, this Court relies on 11 U.S.C. Section 106 as clearly waiving the

9  Government's sovereign immunity as it relates to Section 105 of the Bankruptcy Code.[9]

10 Notably, Section 106 also removes the right of sovereign immunity from many other

11 sections of the Bankruptcy Code, as well.

12     This decision takes the final step of awarding the Trustee and its counsel fees

13 and costs to be paid by the Government, in the amounts set forth below.

14     **III.    Contempt Powers of this Bankruptcy Court**

15     There is no serious question that a violation of a Court's order is punishable by

16 contempt. *Kvassay v. Kvassay (In re Kvassay),* 2016 Bankr. LEXIS 3654, *17; *see also*

17 *Spallone v. United States,* 493 U.S. 265, 276 ("[C]ourts have inherent power to enforce

18 compliance with their lawful orders through contempt.") (cleaned up); *Solow v. Kalikow*

19 *(In re Kalikow),* 602 F.3d 82, 96 (2d Cir. 2010) ("The statutory contempt powers given to

20 a bankruptcy court under § 105(a) complement the inherent powers of a federal court to

21 enforce its own orders.").

22     Where a party violates a court order, such as the discharge injunction, civil

23 contempt sanctions serve "to coerce the contemnor into future compliance with the

---

[8] In this case, absent restitution, this Chapter 7 Estate will suffer actual losses from the costs associated with this matter, to the detriment of the Estate's creditors. Further, the counsels for the Estate will suffer significant losses, which makes their important job of recovering assets for the benefit of the Estate's creditors that much harder and more expensive, again to the detriment of the Estate.

[9] As explained below, in 1994, Congress addressed an earlier Supreme Court decision (*United States v. Nordic Vill. Inc.*, 503 U.S. 30 (1992)) to include the elimination of sovereign immunity with respect to a number of Bankruptcy Code provisions, including Section 105.

court's order or to compensate the complainant for losses resulting from the contemnor's past noncompliance." *New York State Nat. Org. for Women v. Terry,* 886 F.2d 1339, 1352 (2d Cir. 1989) (citing *United States v. United Mine Workers of Am.,* 330 U.S. 258, 303 (1947)). Bankruptcy courts may appropriately use their civil contempt power under § 105(a) to order monetary relief in the form of actual damages, including attorney's fees, costs, and in certain instances damages based on emotional distress and punitive damages for violation of the discharge injunction. *Bessette v. Avco Fin. Servs.*, 230 F.3d 439, 445 (1st Cir. 2000) (collecting cases); 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."); *see also Hansbrough v. Birdsell (In re Hercules Enters., Inc.),* 387 F.3d 1024, 1027 (9th Cir. 2004) ("[I]t is well established that a bankruptcy court is authorized to exercise civil contempt power . . . ."); *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine),* 77 F. 3d 278, 284 (9th Cir. 1996) (a bankruptcy court has the same inherent contempt powers as a district court); Federal Rule of Bankruptcy Procedure 9020 ("Rule 9014 governs a motion for an order of contempt made by the United States trustee or a party in interest.").

As explained by the Ninth Circuit, a court has power to adjudge in civil contempt any person who willfully disobeys a specific and definite order requiring him to do or to refrain from doing an act. A person fails to act as ordered by the court when he fails to take all the reasonable steps within his power to ensure compliance with the court's order. *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1146-47 (9th Cir. 1983) (internal citations, quotation marks, and punctuation omitted). Accordingly, a bankruptcy court may hold a party in contempt when that party fails to take all reasonable steps within its power to comply with a specific and definite order of the bankruptcy court.

A bankruptcy court may also impose coercive and/or compensatory sanctions on a party who is in contempt of a court order, including but not limited to monetary awards to compensate for damages incurred as a result of the contempt, monetary fines to coerce compliance, and incarceration until the contempt is purged. *See, e.g., In re Yan*

*Sui,* 2022 Bankr. LEXIS 3709, at *15-*16 (Bankr. C.D. Cal. 2022) ("Bankruptcy courts have civil . . . contempt powers. . . . Contempt sanctions are considered civil if their purpose is to coerce a recalcitrant party into compliance with an order or to compensate a party for losses resulting from the noncompliance."); *Peterson v. Highland Music, Inc.,* 1997 U.S. Dist. LEXIS 23181, at *19 (C.D. Cal. 1997) ("Court[s] ha[ve] broad discretion to fashion an appropriate civil contempt remedy. . . . Civil contempt sanctions available to the Court include incarceration, fines to coerce compliance and to compensate for damages, and awards of attorneys' fees and other costs . . . .") (internal citations and quotation marks omitted).

"It is firmly established that '[t]he power to punish for contempts is inherent in all courts.'" *Sui v. Marshack*, 2015 U.S. Dist. LEXIS 192017, at *5-6 (C.D. Cal. 2015) (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44, (1991)) (cleaned up).

The Ninth Circuit Court of Appeals has cited to its own *Price v. Lehtinen (In re Lehtinen),* 564 F.3d 1052, 1058 (9th Cir. 2009) to support the determination that the inherent authority of bankruptcy courts allows the courts to impose sanctions and provide compensation for improper litigation tactics. *Yan Sui v. Marshack (In re Yan Sui),* 713 F. App'x 642, 642 (9th Cir. 2018). Also, the Bankruptcy Appellate Panel has held that a bankruptcy court is authorized under § 105(a) to hold a party in civil contempt and impose compensatory or coercive sanctions. *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1189-90; *Renwick v. Bennett (In re Bennett),* 298 F.3d 1059, 1069 (9th Cir. 2002); *Walls v. Wells Fargo Bank, N.A.,* 276 F.3d 502, 506-07 (9th Cir. 2002); *Nash v. Clark Cty. Dist. Atty's. Office (In re Nash)*, 464 B.R. 874, 880 (B.A.P. 9th Cir. 2012). To find a party in civil contempt, the movant must prove "by clear and convincing evidence that the contemnor[] violated a specific and definite order of the court." *In re Dyer,* 322 F.3d at 1190-91. The bankruptcy court must also find that the contemnor "had sufficient notice of [the order's] terms and the fact that he would be sanctioned if he did not comply." *Hansbrough v. Birdsell (In re Hercules Enters., Inc.),* 387 F.3d 1024, 1028 (9th Cir. 2004). Whether the contemnor violated a court order is

not based on subjective beliefs or intent in complying with the order, "but whether in fact [the] conduct complied with the order at issue." *In re Dyer*, 322 F.3d at 1191 (internal citation omitted); *Yan Sui v. Marshack (In re Sui)*, 2016 Bankr. LEXIS 2219, at *8-9 (B.A.P. 9th Cir. 2016).

## IV.    The Government Has No Sovereign Immunity Privilege in This Instance

Through 11 U.S.C. §106 of the Bankruptcy Code, Congress has waived the sovereign immunity of governmental units with respect to various Bankruptcy Code provisions.[10]  Section 106 reads in pertinent part:

(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

(1) Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title.

(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.

(3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.

(4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.

(5) Nothing in this section shall create any substantive claim for relief or cause of

---

[10] *See, e.g.* Section 192 of the U.S. DOJ Civil Justice Manual, "4. Claims Under the Bankruptcy Rules. Section 106(a) provides a waiver of sovereign immunity for claims under both the Bankruptcy Code and under the Federal Rules of Bankruptcy Procedure."

action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law.

11 U.S.C. §106.

To that end, Section 105 of the Bankruptcy Code reads in pertinent part:

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105.

Section 105 has generated serious discussions by courts, including in various U.S. Supreme Court cases, such as *Law v. Seigel*, 571 U.S. 415 (2014), where, in a unanimous ruling, Justice Scalia noted that § 105(a) grants a bankruptcy court authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code, the court also has inherent power to sanction abusive litigation practice, citing *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007), but reminding everyone that a bankruptcy court may not contravene specific statutory provisions. In the *Law v. Seigel* decision, the bankruptcy court ruling contravened the homestead provisions of the bankruptcy code. In the case before the Court today, there is no bankruptcy code provision that is being contravened by its contempt determination and this outcome. The attempted and vague parsing of Sections 105 and 106 by the Government, to find some exception to the complete waiver of sovereign immunity as to Section 105, seems to this Court as wishful thinking. The argument that sovereign immunity is not waived with respect to the established inherent powers of the Court is troubling, at best.

## V.    The Damages Incurred by the Government's Contempt Actions

The Court finds that an award of compensatory damages which the Trustee would not have incurred but for the Government's violation of the August 1 Order are

warranted. The Ninth Circuit has carefully explained the powers and process for

awarding compensatory or remedial sanctions as they arise in this instance, as follows:

> The Supreme Court has explained that when strictly compensatory or remedial sanctions are sought, civil procedures, rather than criminal-type procedures, may be applied. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826-830, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1994). Thus, when only civil procedures are used, the sanction may go no further than to redress the wronged party "for losses sustained" and may not impose any additional consequence as punishment for the sanctioned party's misbehavior. Id. at 829 (quoting *United States v. Mine Workers*, 330 U.S. 258, 304, 67 S. Ct. 677, 91 L. Ed. 884 (1947)). As clarified by the Supreme Court in *Goodyear*, when a sanction is imposed under a court's inherent authority as a penalty or to punish someone, "a court would need to provide procedural guarantees applicable in criminal cases, such as a 'beyond a reasonable doubt' standard of proof." *Goodyear*, 137 S. Ct. at 1186.

*Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1089 (9th Cir. 2021).

> The Ninth Circuit's direction continues,

> Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Goodyear*, 137 S. Ct. at 1186 (quoting *Link v. Wabash R. Co.,* 370 U.S. 626, 630-31, 82 S. Ct. 1386, 8 L. Ed. 2d 734 (1962)). "That authority includes 'the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" *Id.* (quoting *Chambers*, 501 U.S. at 44-45). This power includes the ability to punish conduct before the court as well as actions beyond the court's confines, regardless of whether that conduct interfered with courtroom proceedings. *See Chambers*, 501 U.S. at 44; *F.J. Hanshaw*, 244 F.3d at 1136; *see also Dobbins*, *supra* note 1, at 422 ("This power is often described as 'supervisory' power over the parties and actors within the jurisdiction of a particular court."). Also, "[t]he power of a court over members of its bar is at least as great as its authority over litigants." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 766, 100 S. Ct. 2455, 65 L. Ed. 2d 488 (1980).

*Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1088 (9th Cir. 2021).

In issuing compensatory awards, this Court is also guided by, and mindful of, the

standards of review employed by reviewing courts.[11]

---

[11] "We review a district court's imposition of sanctions under its inherent powers for abuse of discretion. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991); *Jorgensen v. Cassiday,* 320 F.3d 906, 912 (9th Cir. 2003). We also give "great deference" to a district court's factual findings underlying a sanctions order. *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012) (quoting *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.,* 244 F.3d 1128, 1136 (9th Cir. 2001)). Those findings may not be set aside unless they are clearly erroneous. *Anheuser-Busch, Inc. v.*

Finally, the Ninth Circuit has instructed that an application of the "but for" test is the appropriate measure of civil contempt sanctions.

> In *Goodyear,* the Supreme Court reversed a district court's sanction that required the defendant to pay all the litigation costs incurred by the plaintiffs. The Supreme Court explained that if that sanction was compensatory, **the district court was required to draw a causal connection between the defendant's bad faith discovery abuse and the fees awarded.** *Goodyear*, 137 S. Ct. at 1186. The Supreme Court remanded so that the trial court could determine how much of the plaintiffs' litigation expenses would not have been incurred but for the defendant's sanctionable conduct. *Id.* at 1190.

*Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1092 (9th Cir. 2021) (emphasis added).

The legal fees and expenses requested by the Trustee are mainly set out in the Trustee's Request for Fees (Dk. 179), which the Court utilized during the April 9, 2024, hearing in seeking final clarification of the efforts, time and expenses incurred by virtue of the Government's willful violation of this Court's order. The record established by the Trustee's counsel, both in the pleadings and during the April 9, 2024, hearing is quite clear and need not be repeated here. However, it should be noted that the Court made considerable efforts during oral argument to analyze the "but for" test, applying it to the requested fees and costs requested. The Government only contested the time and expenses asserted by the Trustee in limited areas, including personal delivery of documents to the Court, the use of a conference room for a ZoomGov, and the 1.4-hour commute to the conference room by Trustee's counsel.[12]

---

*Nat. Beverage Distribs.,* 69 F.3d 337, 348 (9th Cir. 1995). We review de novo, however, any legal analysis by the district court in imposing sanctions. *NRDC v. Winter*, 543 F.3d 1152, 1157 (9th Cir. 2008). *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1087-1088 (9th Cir. 2021).

[12] The only contest by the Government was whether the "market" fee rate of the law firm incurring time expenditures should apply, or a statutory rate "cap" of $244.62 per hour as provided in 28 U.S.C §2412. That decision is guided by whether a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). In other words, whether the area of law of the practitioner is "specialized" or not. If not, and absent another special factor, the cap is required. As explained further, the field of bankruptcy law is very specialized. It has its own court system, its own Federal Rules of Bankruptcy Procedure, its own title of the United States Code (Title 11), its own waiver of sovereign immunity (Section 106 of Title 11), its own Article I bankruptcy judges, there exists multiple state bar organizations' recognition of bankruptcy law as a specialty (including Arizona, California, Louisiana, North Carolina, South Carolina and Texas), as well as the American Bar

It is the determination of this Court, as specifically set out in serial fashion on the record of April 9, 2024, and amplified by the Trustee's pleadings, that the time incurred by the Trustee, that would not have otherwise been expended but for the Government's violation of this Court's August 1, 2023 Order, is 69.5 hours of attorney and paralegal time. Based on the Court's appreciation of the normal hourly rates routinely charged by the bankruptcy Trustee's litigation counsel and paralegals ($500.00 and $125.00, respectively) before the Court, the legal fees to be assessed against the Government and in favor of the Landau Firm are $32,250.00 (64.5 hours attorney time) and $625.00 (5.0 hours paralegal time), for a total of $32,875.00. The Court, reviewing the expenses, awards expense reimbursement for the first deposition in the amount of $1,900.00, copying of pleadings are awarded in the amount of $272.00, and a remote deposition room expense is awarded in the amount of $140.00, for a total expense reimbursement award of $2,412.00.

It is the decision of this Court that the Government shall reimburse the Trustee in the total amount of $37,599.00.

This is a single award, applicable to all three identical contempt matters filed in *Marshack v. Eisenhower Carlson, PLLC*, Adv. No. 8:20-01059, *Marshack v. Gallo Builders, Inc*., Adv. No. 8:20-01060, and *Marshack v. Honda Aircraft Company LLC*,

---

Association's. While there are some similarities, general law and trial practice differ significantly from those activities in bankruptcy court.  Bankruptcy cases are usually more involved with monetary and economic issues and quite often involve numerous parties in interest in a single case. Bankruptcies within our specialized courts involve specialized counsel familiar with legal and equitable financial claims, security and banking law, and frequently include cases within cases (i.e., adversary proceedings). The nomenclature and procedures are all very different from regular law practice. The plain trial lawyer also needs to be a bankruptcy specialist. Consequently, there is a steep learning curve from the prospective of a lawyer in the bankruptcy field. Accordingly, the Government's request that the statutory rate cap be imposed is denied.

The Government's response to the requirement was that the Trustee's counsels might not be "certified" as specialists. This Court takes judicial notice that the Trustee (as both a Chapter 7 and 11 trustee and an attorney), and the employed counsels of the Trustee, are bankruptcy experts and specialists, and the employment of the Trustee's counsel in this, and many other matters arising in the Avenatti firm bankruptcy case, has been approved by this Court, with one of the standards being that the firm holds expert credentials in the bankruptcy field and conducts itself accordingly, as witnessed by the Court over the past several years of this case's existence.

Adv. No. 8:20-01150. A copy of this order shall be entered in all 3 cases. As noted

above in Footnote 1, the docket references herein refer to the pleadings filed in

*Marshack v. Eisenhower Carlson, PLLC*, Adv. No. 8:20-01059, which is the case

referenced throughout the pleadings and this Order, with the parties' consent.

**IT IS SO ORDERED.**

Date: May 7, 2024

Scott C. Clarkson
United States Bankruptcy Judge